UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRY KURISU, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SVENHARD SWEDISH BAKERY SUPPLEMENTAL KEY MANAGEMENT RETIREMENT PLAN, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-06409-EMC<br><br>**ORDER DENYING BAKERY DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 16 |

　　　　Plaintiffs are Kerry Kurisu, Douglas Prola, and Bill Pruitt. Each worked for Svenhard's Swedish Bakery ("Swedish Bakery") for more than 30 years. They have filed suit because they were promised pension benefits pursuant to the Svenhard's Swedish Bakery Supplemental Key Management Retirement Plan (the "Plan") but they have not been paid those promised benefits, at least not in full. Plaintiffs have sued the following defendants:

- The Plan;
- Ronny Svenhard, David Kunkel, James Kohles, and Michelle Barnett, each of whom was allegedly a plan administrator and/or fiduciary of the Plan; and
- the Bakery Defendants (United States Bakery, Mountain States Bakeries LLC, and Central California Baking Company), which are the successors of the Swedish Bakery.

　　　　Currently pending before the Court are three motions to dismiss. This order addresses only the Bakery Defendants' motion to dismiss. The Court finds this matter suitable for resolution without oral argument and thus **VACATES** the hearing on the motion to dismiss. The motion is

hereby **DENIED**. However, as discussed below, the Court severs the claims against the Bakery Defendants and transfers them to the District of Oregon.

### I. FACTUAL & PROCEDURAL BACKGROUND

In their complaint, Plaintiffs allege as follows.

Plaintiffs all worked for the Swedish Bakery for more than 30 years. *See* Compl. ¶ 10. At the times they retired, Mr. Kurisu was a purchasing manager, Mr. Prola a regional sales manager, and Mr. Pruitt as a regional sales manager/national accounts manager. *See* Compl. ¶ 10.

On and after 1995, the individual defendants represented that they would provide pension benefits to Plaintiffs. *See* Compl. ¶ 12.

> From 1995 to 2019, the Fiduciary Defendants[] [*i.e.*, the individual defendants] made representations to Plaintiffs regarding their pension benefits, including, but not limited to: (a) the Fiduciary Defendants would annually contribute to their pension amounts of at least 10% of Plaintiffs' gross pay; (b) Plaintiffs should not worry about their retirement because the Fiduciary Defendants' had set up an exclusive top hat pension plan to cover them and other managerial, office and administrative employees; and (c) the Fiduciary Defendants told Plaintiffs that their pension would pay at least thirty percent of their yearly salary for the rest of their life.

Compl. ¶ 14.

In 2017, Mr. Prola retired. Initially, he was told that his pension benefit check would be approximately $1,187 per month. After Mr. Prola challenged the amount, the benefits were increased to $1,960 per month. However, this was still less than what had been promised. *See* Compl. ¶ 16.

In February 2019, Mr. Pruitt retired. He received a pension benefit check in the amount of $1,417 per month. Mr. Pruitt disputed the amount, but to no avail. *See* Compl. ¶ 17.

In March 2019, Mr. Kurisu retired. Initially, he received a pension benefit check in the amount of $1,377 per month. After Mr. Kurisu challenged the amount, the benefits were increased to $1,788 per month, but this was still less than what he had been promised. *See* Compl. ¶ 15.

Thereafter, Mr. Kurisu asked to be given a copy of the Plan and other documents related to the calculation of his pension benefits, but he was refused. *See* Compl. ¶ 18. It was not until

August 2019 that the individual defendants provided a copy of the Plan. *See* Compl. ¶ 20.

In or about November 2019, the Swedish Bakery sold substantially all of its assets to the Bakery Defendants. *See* Compl. ¶ 22. After the change in control, Plaintiffs were no longer paid their monthly pension benefits, *see* Compl. ¶¶ 15-17, even though the Bakery Defendants were obligated to make the payments as the successors to the Swedish Bakery. The Plan included a provision stating:

> In the event that the Company or substantially all of its assets are sold, or there is a chance in control of the business to persons or entities outside of the Svenhard family, the rights of Participants and the Company's obligations to pay Retirement Benefits under this Plan shall remain in full force and effect. The Company shall condition any sale, merger or reorganization of the Company or substantially all of its assets upon the surviving entity's or successor organization's assuming the Company's obligations under this Plan.

Compl. ¶ 21.

Based on, *inter alia*, the above allegations, Plaintiffs have asserted the following causes of action:

(1) A claim pursuant to ERISA § 502(a)(1)(B).

(2) A claim for federal common law estoppel.

(3) A claim pursuant to ERISA § 502(a)(3).

(4) A claim pursuant to ERISA § 502(a)(1)(A).

## II.   DISCUSSION

In their motion to dismiss, the Bakery Defendants make two arguments: (1) that venue is improper in this District with respect to the claims asserted against them and (2) that, even if venue were proper, Plaintiffs have failed to state a claim for relief because the agreements between the Swedish Bakery and the Bakery Defendants did not require the Bakery Defendants to assume the obligations under the Plan. The Court need only address the first argument.

A motion to dismiss based on improper venue is brought pursuant to Federal Rule of Civil Procedure 12(b)(3). In a 12(b)(3) motion, "the pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). However, all reasonable inferences must be drawn in favor of the

plaintiff, and all factual conflicts must be resolved in favor of the plaintiff as well. *See id.* at 1138. The plaintiffs bears the burden of showing that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

As indicated above, Plaintiffs' claims are predicated on ERISA, including the claim for estoppel. *See Greany v. W. Farm Bureau Life Ins. Co.*, 973 F.2d 812, 821 (9th Cir. 1992) (noting that the court has "recognized that federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA"); *see also Wong v. Flynn-Kerper*, No. 19-56289, 2021 U.S. App. LEXIS 16837 (9th Cir. June 7, 2021) (noting the same). ERISA contains its own venue provision. It provides as follows:

> Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

29 U.S.C. § 1132(e)(2).

Because there is no such thing as "pendent-party venue," Plaintiffs must show, in the instant case, that venue is proper with respect to their claims against the Bakery Defendants specifically (and not the remaining defendants, *i.e.*, the Plan and the individual defendants). *See Gamboa v. USA Cycling, Inc.*, No. 2:12-cv-10051-ODW(MRWx), 2013 U.S. Dist. LEXIS 56240, at *10 (C.D. Cal. Apr. 18, 2013) (rejecting "[t]he theory of pendent-party venue [which] provides that if all claims arise out of the same transaction or occurrence and venue is proper as to at least one defendant, a court should be able to retain the entire action under a pendent-party venue); *see also Leroy-Garcia v. Brave Arts Licensing*, No. C 13-01181 LB, 2013 U.S. Dist. LEXIS 109872, at *47-48 n.12 (N.D. Cal. Aug. 5, 2013) ("reject[ing] any argument that [the court] might be able to find venue proper based on a 'pendent party venue' theory"); *cf. Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990) (stating that a court "must look to see whether venue is established over each defendant"); *Lamont v. Haig*, 590 F.2d 1124, 1135 n.70 (D.C. Cir. 1978) (stating that "venue must be proper as to each defendant"); *Prescott- Harris v. Fanning*, No. 15-1716 (RC), 2016 U.S. Dist. LEXIS 171360, at *21 (D.D.C. Dec. 12, 2016) (noting that there must be "venue with respect to *each defendant* and each cause of action") (emphasis added);

4

*Markel Am. Ins. Co. v. Pac. Asian Enters.*, No. C-07-5749 SC, 2008 U.S. Dist. LEXIS 60536, at *5 (N.D. Cal. July 28, 2008) (stating that, "'[w]hen there are multiple parties and/or multiple claims in an action, the plaintiff must establish that venue is proper as to *each defendant* and as to each claim'") (emphasis added). *Compare Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1089 (N.D. Cal. 2018) (noting that, "under the pendent venue doctrine, when one or more *claims* are closely related (*e.g.*, arise out of a common nucleus of operative facts), venue is proper as to all claims so long as venue is established for just one claim") (emphasis added).

Plaintiffs have failed to show that there is proper venue as to the claims against the Bakery Defendants.

*Where the plan is administered.*  Plaintiffs argue that, after the Bakery Defendants purchased the Swedish Bakery's assets in 2014, Plaintiffs continued to work in this District (specifically, Oakland) and that the Swedish Bakery did not relocate to Exeter (in the Eastern District of California) until early 2016. *See* Opp'n at 3. The problem for Plaintiffs is that where they continued to work is not dispositive. The question is where the Plan was administered. Plaintiffs charge the Bakery Defendants with administering the Plan, but the Bakery Defendants are not located in this District, but rather in Oregon.

*Where the breach took place.*  Plaintiffs contend that "many . . . breaches occurred in this [D]istrict" because, *e.g.*, "[f]rom March of 2019 through November 2019 [which was after the acquisition], the Plan paid Kurisu less than what he had been promised, failed to provide him with Plan Documents and corresponded with him in Walnut Creek, California." Opp'n at 3. Similar to above, the problem for Plaintiffs is that the Bakery Defendants' alleged breaches all took place where the Bakery Defendants were making the decisions – *i.e.*, in Oregon. *Cf. Placek v. Shopoff*, No. 18-CV-4326 (VEC), 2018 U.S. Dist. LEXIS 163239, at *17-19 (S.D.N.Y. Sep. 24, 2018) (in discussing whether there should be a transfer pursuant to 28 U.S.C. § 1404, noting that "a party's breach of an agreement occurs where the breaching party is located"). That Plaintiffs felt the *effects* of the breaches in this District is not dispositive.

*Where a defendant resides.*  The Bakery Defendants do not reside in this District.

Because Plaintiffs have failed to show that venue is proper as to the Bakery Defendants,

5

the Court could dismiss the claims against them. However, the Court finds that it is more appropriate to sever the claims against the Bakery Defendants and transfer them (as Plaintiffs have requested) to the District of Oregon pursuant to 28 U.S.C. § 1406(a) (providing that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought"). This approach is particularly appropriate as there is already litigation in the District of Oregon against the Bakery Defendants relating to their successor liability.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED** but the claims against the Bakery Defendants are severed and transferred to the District of Oregon pursuant to § 1406.

The Clerk of the Court is directed to immediately effect the transfer of the claims to the District of Oregon consistent with this opinion.

This order disposes of Docket No. 16.

**IT IS SO ORDERED**.

Dated: June 17, 2021

_____
EDWARD M. CHEN
United States District Judge