1

2

3

4                        UNITED STATES DISTRICT COURT

5                       NORTHERN DISTRICT OF CALIFORNIA

6

7   KERRY KURISU, et al.,                    Case No.  20-cv-06409-EMC

8                  Plaintiffs,

9         v.                                 ORDER GRANTING DEFENDANT
                                             KOHLES'S MOTION TO DISMISS
10  SVENHARD SWEDISH BAKERY                   AND GRANTING IN PART AND
    SUPPLEMENTAL KEY MANAGEMENT               DENYING IN PART DEFENDANTS
11  RETIREMENT PLAN, et al.,                  SVENHARD AND KUNKEL'S
                                             MOTION TO DISMISS
12                 Defendants.
                                             Docket Nos. 27, 29

13

14

15        Plaintiffs Kerry Kurisu, Douglas Prola, and Bill Pruitt are former employees of Svenhard's

16  Swedish Bakery ("Swedish Bakery").  They have filed an ERISA action against multiple

17  defendants, asserting, *inter alia*, a claim for pension benefits.  Defendants are (1) the Svenhard's

18  Swedish Bakery Supplemental Key Management Retirement Plan (the "Plan") and (2) Ronny

19  Svenhard, David Kunkel, James Kohles, and Michelle Barnett (the "Individual Defendants"), each

20  of whom is allegedly a plan administrator and/or fiduciary of the Plan.[1]

21        Currently pending before the Court are two motions to dismiss: (1) a motion to dismiss

22  filed by Mr. Svenhard and Mr. Kunkel and (2) a motion to dismiss filed by Mr. Kohles.[2]

23              I.        FACTUAL & PROCEDURAL BACKGROUND

24        In their complaint, Plaintiffs allege as follows:

25  _____

26  [1] In their complaint, Plaintiffs also named as defendants the successors of the Swedish Bakery (the
    "Bakery Defendants"); however, the Court severed the claims against the Bakery Defendants and
27  transferred the claims against them to the District of Oregon.

28  [2] The remaining Individual Defendant, Ms. Barnett, has not made an appearance in this case.
    According to Mr. Svenhard and Mr. Kunkel, it is because she is deceased.

Plaintiffs worked for the Swedish Bakery for more than 30 years. *See* Compl. ¶ 10. They retired from the Swedish Bakery between 2017 and 2019. At the time of retirement, Mr. Kurisu was a purchasing manager, Mr. Prola was a regional sales manager, and Mr. Pruitt was a regional sales manager/national accounts manager. *See* Compl. ¶ 10.

Beginning in 1995 and continuing through 2019, the Individual Defendants represented to Plaintiffs that they would receive pension benefits. *See* Compl. ¶ 12. Specifically, the Individual Defendants represented that

> (a) the [Individual] Defendants would annually contribute to [Plaintiffs'] pension amounts of at least 10% of Plaintiffs' gross pay; (b) Plaintiffs should not worry about their retirement because the [Individual] Defendants[] had set up an exclusive top hat pension plan to cover them and other managerial, office and administrative employees; and (c) the [Individual] Defendants told Plaintiffs that their pension would pay at least thirty percent of their yearly salary for the rest of their life.

Compl. ¶ 14.[3]

Mr. Prola retired in 2017. He was initially told that his pension benefit check would be approximately $1,187 per month. After Mr. Prola challenged this amount, the Individual Defendants increased his benefits to $1,960 per month, but this was still less than what had been promised. *See* Compl. ¶ 16.

Mr. Pruitt retired in February 2019, after which he received a pension benefit check in the amount of $1,417 per month. Although Mr. Pruitt disputed this amount, no changes were made. *See* Compl. ¶ 17.

Mr. Kurisu retired in March 2019 and initially received a pension benefit check of $1,377 per month. Mr. Kurisu challenged this amount, after which the Individual Defendants increased the benefits of $1,788 per month, which was still less than the amount he had been promised. *See* Compl. ¶ 15. Subsequently, Mr. Kurisu requested a copy of the Plan and other documents related to the calculation of his pension benefits, but the Individual Defendants refused to produce any

---

[3] In the complaint, Plaintiffs do not specify which Individual Defendants made which representations; nor do Plaintiffs specify the precise dates the representations were made. At the hearing, Plaintiffs confirmed that the representations were all orally made.

United States District Court
Northern District of California

documents and told him that no such documents existed.  *See* Compl. ¶ 18.  It was not until August 2019 that the Individual Defendants provided Mr. Kurisu with a copy of a written Plan. *See* Compl. ¶ 20.  The terms of the written Plan differed from the promises that were made to Plaintiffs.[4]

In or around November 2019, the Swedish Bakery sold substantially all of its assets to the Bakery Defendants.  *See* Compl. ¶ 22.  After this change in control, Plaintiffs no longer received any pension benefits.  *See* Compl. ¶¶ 15-17.

Based on *inter alia*, the above allegations, Plaintiffs have asserted the following causes of action:

(1) **A claim pursuant to ERISA § 502(a)(1)(B).**  Section 502(a)(1)B provides that a participant may bring a civil action "to recover benefit due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). According to Plaintiffs, Defendants have failed to pay them their full benefits.  *See* Compl. ¶ 27.

(2) **A claim for federal common law estoppel.**  According to Plaintiffs, they were never given a copy of the Plan (including but not limited to the written Plan) during their employment with the Swedish Bakery.  Plaintiffs, however, were promised certain things – *e.g.*, that "(a) the [Individual] Defendants would annually contribute to their pension amounts of at least 10% of Plaintiffs' gross pay; (b) Plaintiffs should not worry about their retirement because the [Individual] Defendants had set up an exclusive top hat pension plan to cover them and other managerial, office and administrative employees; and (c) the [Individual]

---

[4] In their complaint, Plaintiffs do not specify what the differences between the terms of the written Plan and the oral promises are.  It appears that one difference is how much Plaintiffs would receive in benefits.  According to Plaintiffs, they were promised "at least thirty percent of their yearly salary for the rest of their life," Compl. ¶ 14; in contrast, the written Plan provides for benefits based on 30% of the participant's "Final Average Base Salary" and then reduced by an "Offset."  *See* Plan, art. IV, § 4.1(a); *see also* Plan, art. I (defining "Final Average Base Salary" and "Offset").

1   Defendants told Plaintiffs that their pension would pay at least thirty percent of
2   their yearly salary for the rest of their life."  Compl. ¶ 14.  Because of these
3   promises, Plaintiffs maintain that Defendants should be compelled to pay them a
4   "pension equal to thirty percent of their annual salary for life," an amount
5   exceeding that contained in the written Plan.  Compl. ¶ 41.

6   (3)  **A claim pursuant to ERISA § 502(a)(3).**  Section 502(a)(3) provides that a
7   participant may bring a civil action "(A) to enjoin any act or practice which violates
8   any provision of this subchapter or the terms of the plan, or (B) to obtain other
9   appropriate equitable relief (i) to redress such violations or (ii) to enforce any
10   provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).
11   According to Plaintiffs, Defendants have breached their fiduciary duties and
12   violated the terms of the Plan – *e.g.*, by failing to provide them with documents
13   related to their claim for benefits, by failing to identify the Plan provisions on
14   which the denial of benefits was based, and by failing to describe for them what
15   information was needed to perfect their claims. *See* Compl. ¶ 45.  Because of these
16   failures, "Plaintiffs have incurred consequential financial losses and Defendants
17   have realized gains, meriting the imposition of an equitable surcharge against
18   Defendants."  Compl. ¶ 47.  Plaintiffs' losses include the incurring of attorneys'
19   fees and costs "associated with the investigation of this claim and the prosecution
20   of this action."  Compl. ¶ 48.

21   (4)  **A claim pursuant to ERISA § 502(a)(1)(A).**  Section 502(a)(1)(A) provides that a
22   participant may bring a civil action "for the relief provided for in subsection (c) of
23   this section." 29 U.S.C. § 1132(a)(1)(A).  Subsection (c) provides that a plan
24   administrator who fails to meet statutory requirements or who fails "to comply with
25   a request for any information which such administrator is required . . . to furnish
26   . . . may in the court's discretion be personally liable to [the] participant . . . in the
27   amount of up to $100 a day from the date of such failure . . . , and the court may in
28   its discretion order such other relief as it deems proper." *Id.* § 1132(c)(1).

4

1    According to Plaintiffs, their counsel asked for Plan and other related documents on

2    April 6, 2019, but the documents were not provided (at least not until August

3    2019).  *See* Compl. ¶ 52.

4    In the pending motions, Mr. Svenhard, Mr. Kunkel, and Mr. Kohles challenge each of the

5    above claims.

6                                    ## II.        LEGAL STANDARD

7    Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain

8    statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A

9    complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil

10   Procedure 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss

11   after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic*

12   *Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must

13   . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765

14   F.3d 1123, 1135 (9th Cir. 2014).  The court "accept[s] factual allegations in the complaint as true

15   and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St.*

16   *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a

17   complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

18   allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

19   effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).  "A claim has facial

20   plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

21   inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The

22   plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

23   possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).

24                        ## III.      SVENHARD AND KUNKEL'S MOTION TO DISMISS

25   A.       Incorporation-by-Reference Doctrine

26   As a preliminary matter, the Court notes that Mr. Svenhard and Mr. Kunkel have provided

27   a copy of a written Plan as part of their motion to dismiss.  *See* Kunkel Decl., Ex. A (written Plan).

28   On its face, the written Plan indicates that the Board approved the Plan in December 2008 and that

United States District Court
Northern District of California

5

1    the Plan is effective as of January 2009.

2        Ordinarily, on a 12(b)(6) motion to dismiss, a court does not consider materials outside the

3    four corners of the complaint.  *Cf.* Fed. R. Civ. P. 12(d) (providing that, when materials outside of

4    the pleadings are considered by the court on a Rule 12(b)(6) motion to dismiss, the motion is to

5    "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties

6    shall be given reasonable opportunity to present all material made pertinent to such a motion by

7    Rule 56").  However, there are certain exceptions.  For example, a court may consider "'matters

8    properly subject to judicial notice.'"  *Manzarek*, 519 F.3d at 1030-31; *see also* Fed. R. Evid. 201

9    (providing that a "court may judicially notice a fact that is not subject to reasonable dispute

10   because it: (1) is generally known . . . ; or (2) can be accurately and readily determined from

11   sources whose accuracy cannot reasonably be questioned").  In addition, under the incorporation-

12   by-reference doctrine, a court may consider "documents whose contents are alleged in a complaint

13   and whose authenticity no party questions, but which are not physically attached to the pleading."

14   *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v.*

15   *City of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *see also Schwarz v. United States*, 234 F.3d

16   428, 435 (9th Cir. 2000).

17       Mr. Svenhard and Mr. Kunkel argue that the Court should consider the contents of the

18   written Plan pursuant to the incorporation-by-reference doctrine.  They point out that Plaintiffs

19   have quoted from the written Plan in their complaint.[5]  *See* Compl. ¶ 21.  In response, Plaintiffs

20   contend that the Court should not consider the written Plan because they question the document's

21   authenticity.  Plaintiffs acknowledge that the written Plan was provided to them in August 2019.

22   However, they point out that they never received a copy of the written Plan during their

23   employment with the Swedish Bakery (even though the Board purportedly approved the Plan in

24   December 2008), that Defendants represented for years that no written Plan even existed, and that

25   the terms of the written Plan are not entirely the same as the oral promises that were made to them.

26   _____

27   [5] Plaintiffs relied on a provision in the written Plan – addressing successorship – to support their
     argument that (1) the Bakery Defendants assumed the obligation to pay them pension benefits or
28   (2) the Individual Defendants failed to ensure that the Bakery Defendants would assume the
     obligation.

United States District Court
Northern District of California

1        For purposes of this motion, the Court takes into account the terms of the written Plan

2    pursuant to the incorporation-by-reference doctrine.  As Mr. Svenhard and Mr. Kunkel point out,

3    Plaintiffs relied on the terms of the written Plan in their complaint.  The Court acknowledges

4    Plaintiffs' position that the written Plan is not authentic.  However, their argument is not so much

5    that the written Plan is inauthentic per se – *e.g.*, that it is some kind of fake document.  Rather,

6    Plaintiffs have challenged the document given the circumstances under which it came about and

7    its inconsistency with the oral promises that were given to them.  Nothing about the incorporation-

8    by-reference doctrine bars the Court from considering the written Plan while also giving room to

9    Plaintiffs to contest the bona fides and effect of the written Plan.  *Cf. Sgro v. Danone Waters of N.*

10   *Am., Inc.*, 532 F.3d 940, 942 n.1 (9th Cir. 2008) (considering plan documents because plaintiff had

11   referred to them in his complaint; but acknowledging that, "where the parties disagree as to

12   whether the plan documents accurately reflect the terms of the plan as it was actually

13   implemented, consideration of such documents does not resolve the relevant issues in the context

14   of a motion to dismiss").

15   B.    <u>Claim for Benefits Pursuant to Section 502(a)(1)(B)</u>

16        In their first cause of action, Plaintiffs have asserted a claim for benefits pursuant to §

17   502(a)(1)(B) of ERISA.  Section 502(a)(1)(B) provides that a participant may bring civil action

18   "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of

19   the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132

20   (a)(1)(B).  According to Plaintiffs, Defendants failed to pay them their full benefits.  *See* Compl. ¶

21   27.[6]

22

23   [6] As discussed below, there is a dispute between the parties as to whether the Plan at issue is what
is known as a "top hat" plan.  Even if the Plan is a top hat plan, that would have no impact on

24   Plaintiffs' claim for benefits.  *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 268 n. 5 (3d
Cir. 2004) ("A participant in a 'Top Hat' plan may bring a civil action 'to recover benefits due to

25   him under the terms if his plan, to enforce his rights under the terms of the plan, or to clarify his
rights to future benefits under the terms of the plan.'").  *See Kemmerer v. ICI Ams., Inc.*, 70 F.3d

26   281, 286-87 (3d Cir. 1995) ("[D]espite the exemption of top hat plans from many of ERISA's
regulations, ERISA's enforcement provision clearly permits participants in top hat plans, as well

27   as other covered plans, to bring civil actions 'to enforce the substantive provisions of the Act or to
recover benefits due or otherwise enforce the terms of the plan.'") (citing *Barrowclough v. Kidder,*

28   *Peabody & Co.*, 753 F.2d 923, 930 n.7 (3d Cir. 1985); and 29 U.S.C. § 1132(a)(1)(B)).  Neither
party has argued otherwise.

1       1.     Proper Defendants

In the pending motion, Mr. Svenhard and Mr. Kunkel argue first that they are not proper defendants for Plaintiffs' claim for benefits.  In *Cyr v. Reliance Std. Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011), the Ninth Circuit addressed who is a proper defendant for a § 502(a)(1)(B) claim. There, the court began by noting that, on its face, § 502(a) focuses on who may *bring* a suit; the statute says nothing about who may *be sued* – indeed, it imposes "no limits."  *Id.* at 1205.  This was in contrast to other ERISA provisions which did specify who was a proper defendant.  *See id.* at 1206.  In light of this difference, the Ninth Circuit rejected the argument that defendants in a claim for benefits should be limited to plans and plan administrators alone.  The court indicated that the issue of who is a proper defendant in a claim for benefits should turn on who has "authority to resolve claim benefits or . . . responsibility to pay them."  *Id.* at 1207.  In *Cyr*, the plan insurer was the entity that denied the request for increased benefits and further was responsible for paying benefits claims; it was therefore a "logical defendant for an action . . . to recover benefits due . . . under the terms of the plan and to enforce . . . rights under the terms of the plan."  *Id.*

Since *Cyr*, the Ninth Circuit has not given further guidance on the precise reach of who is a proper defendant in a § 502(a)(1)(B) case.  It has confirmed, however, "proper defendants under § 1132(a)(1)(B) for improper denial of benefits at least include ERISA plans, formally designated plan administrators, insurers or other entities responsible for payment of benefits, and de facto plan administrators that improperly deny or cause improper denial of benefits."  *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1297-98 (9th Cir. 2014) (also stating that claims for benefits "may be brought 'against the plan as an entity *and against the fiduciary of the plan*'" – *i.e.*, "any entity that 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . [or] has any discretionary authority or discretionary responsibility in the administration of such plan'") (emphasis in original).

In light of *Cyr* and *Spinedex*, Mr. Svenhard and Mr. Kunkel's suggestion that they are not proper defendants because they are not the Plan itself, lacks merit.  *Cyr* and *Spinedex* recognize

United States District Court
Northern District of California

1    that there can be defendants in a § 502(a)(1)(B) claim other than the plan at issue.

2          To the extent Mr. Svenhard and Mr. Kunkel argue that they are still improper defendants

3    because they were not administrators of the Plan, there is a different problem.  Although these

4    Individual Defendants claim that they were *not* Plan administrators, Plaintiffs have alleged the

5    opposite in their complaint.  To be sure, Plaintiffs' allegation on this point is conclusory.  *See*

6    Compl. ¶ 6 (alleging that the Individual Defendants "were the Plan Administrators and fiduciaries

7    of the Plan").  But the written Plan submitted by Mr. Svenhard and Mr. Kunkel lends support to

8    Plaintiffs' allegation.  The written Plan defines "Administrator" as "the Company, acting through

9    its Board, or such other person or persons as designated by the Board."  Plan, art. II, § 2.1.  There

10   appears to be no dispute that Mr. Svenhard and Mr. Kunkel were members of the Board.  *See* Mot.

11   at 25 (referring to these Individual Defendants acting "in their official capacity as members of the

12   Board of Directors").  Their role on the Board permits a reasonable inference that Mr. Svenhard

13   and Mr. Kunkel were Plan "Administrators."[7]

14         Moreover, under *Cyr* and *Spinedex*, a proper defendant includes those who have the

15   authority to rule on claims for benefits, are responsible for paying benefits, or have authority or

16   control regarding management of the plan.  In addition to the fact that they were Board members,

17   it is plausible that Mr. Svenhard and Mr. Kunkel had authority or control regarding management

18   of the Plan given that they were among the ones allegedly making promises about the Plan to

19   Plaintiffs in the first place – and for a lengthy period of time (*i.e.*, 1995 to 2019).  *See* Compl. ¶ 14.

20         Mr. Svenhard and Mr. Kunkel protest that, even if they are properly named as defendants,

21   they still cannot be held *personally* liable – *i.e.*, at best, they are being sued in their "official

22   capacities."  *See* Mot. at 25.  Plaintiffs did not respond to this specific argument in their

23   opposition.  *See* Opp'n at 25.  Accordingly, the Court holds that Plaintiffs have waived any

24   argument that Mr. Svenhard and Mr. Kunkel may be held personally (*i.e.*, individually) liable for

25

26

27   [7] In declarations, Mr. Svenhard and Mr. Kunkel claim that the Board went on to designate Ms.
     Barnett as the Plan Administrator.  However, their declarations cannot be considered at the
28   12(b)(6) phase.

the claim for benefits.[8]

In this regard, it is noteworthy that ERISA provides in § 502(d)(2): "Any money judgment under this title against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this title." 29 U.S.C. § 1132(d)(2); *see also Werb v. ReliaStar Life Ins. Co.*, 847 F. Supp. 2d 1140, 1150 (D. Minn. 2012) (stating that § 502(d)(2) "simply recognizes a plan as a legal entity capable of suing and being sued in its own name[] [a]nd that the individual plan trustee or administrator is thus not liable absent some other legal basis for such individual liability"); *cf. Jenkins v. Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers Local No. 79 Pension Fund,* No.2:14cv526, 2015 U.S. Dist. LEXIS 35146, *9 (E.D. Va. Mar. 20, 2015) (citing § 502(d)(2) in support of the proposition that "'defendants cannot be held personally liable for money damages absent a showing of individual misconduct'"); *Keegan v. Steamfitter Local Union No. 420 Pension Fund*, 174 F. Supp. 2d 332, 340 (E.D. Pa. 2001) (indicating no liability where no *willful* breach of fiduciary duty was alleged or found).

### 2.   Exhaustion of Administrative Remedies

Mr. Svenhard and Mr. Kunkel contend that, even if they are proper defendants, the claim for benefits should be dismissed for an independent ground – *i.e.*, because Plaintiffs have not exhausted their administrative remedies, as provided for in the written Plan, prior to bringing suit. *See Amato v. Bernard*, 618 F.2d 559, 567 (9th Cir. 1980) (stating that "the legislative history of ERISA . . . clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under the Act"); *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 961 n.2 (9th Cir. 2006) ("The ERISA statutes do not require exhaustion of administrative remedies before a claimant can bring an action in court, but our cases suggest that a claimant must exhaust administrative remedies first."); *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008) ("we have consistently held that before bringing

---

[8] If Plaintiffs prevail on their claim for benefits, the source of payment may depend on whether or not the Plan is a top hat plan.  *See infra,* Section III.C.

1    suit under § 502, an ERISA plaintiff claiming a denial of benefits 'must avail himself or herself of

2    a plan's own internal review procedures before bringing suit in federal court.'") (quoting *Diaz v.*

3    *United Agric. Employee Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1483 (9th Cir. 1995)).

4           Even assuming the written Plan's internal procedures applied here, exhaustion is not

5    required where resort to the administrative route would be futile or the remedy inadequate. *See id.*

6    at 568; *see also Diaz*, 50 F.3d at 1485 (acknowledging the futility exception but noting that a

7    continued refusal to pay is not enough to show futility). Here, Plaintiffs have made sufficient

8    allegations to support a claim of futility. There is no dispute that, since the Swedish Bakery was

9    sold to the Bakery Defendants, Plaintiffs have not been paid any pension benefits at all, with the

10   Swedish Bakery taking the position that obligations have been passed to the Bakery Defendants as

11   its successor and with the Bakery Defendants disputing such. It is therefore plausible that

12   engaging in the administrative process would be futile.

13   C.     Federal Common Law Estoppel Claim

14          In their second cause of action, Plaintiffs assert a claim for estoppel under the federal

15   common law. The claim is, in essence, an alternative claim for benefits. Plaintiffs seek to estop

16   Defendants from denying the benefits that Plaintiffs were orally promised, promises which exceed

17   the written Plan. *See* Compl. ¶ 41. Those alleged promises were as follows:

18                    (a) the [Individual] Defendants would annually contribute to their
                      pension amounts of at least 10% of Plaintiffs' gross pay; (b)
19                    Plaintiffs should not worry about their retirement because the
                      [Individual] Defendants[] had set up an exclusive top hat pension
20                    plan to cover them and other managerial, office and administrative
                      employees; and (c) the [Individual] Defendants told Plaintiffs that
21                    their pension would pay at least thirty percent of their yearly salary
                      for the rest of their life.
22

23   Compl. ¶ 14.[9]

24          The Ninth Circuit has recognized claims for equitable estoppel in the ERISA context,

25   though only in particular circumstances. For example, in *Greany v. Western Farm Bureau Life*

26

27   _____
     [9] Defendants have not argued that they cannot be held personally liable under equitable estoppel
28   and so this Court need not address that issue here. *See Spink v. Lockheed Corp.*, 125 F.3d 1257,
     1261-63 (9th Cir. 1997) (allowing a claim for equitable estoppel against certain individual
     defendants who made representations to the plaintiff in said case).

United States District Court
Northern District of California

1   *Insurance Co.*, 973 F.2d 812 (9th Cir. 1992), the plaintiff was an individual who had employer-

2   provided health insurance, which was governed by ERISA. *See id.* at 814. After getting a new

3   job, the plaintiff was expressly told that the employer's coverage would last through August 31,

4   1983. *See id.* However, the plaintiff was later told that a mistake had been made and that his

5   coverage had actually terminated on August 1, 1983. *See id.* at 815. The plaintiff therefore

6   argued that the employer should be estopped from terminating coverage on August 1, 1983, on a

7   theory of equitable estoppel. *See id.* at 820-21. Noting that prior authority recognized equitable

8   estoppel in ERISA cases, the Court turned to the general elements of equitable estoppel: "(1) the

9   party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or

10  must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter

11  must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Id.*

12  at 821. The court held, however, that these elements alone were not enough to support a claim for

13  equitable estoppel in the plaintiff's ERISA case because "a party cannot maintain a federal

14  equitable estoppel claim against a trust fund *where recovery on the claim would contradict written*

15  *plan provisions.*" *Id.* (emphasis added). That outcome would "contradict the writing and

16  amendment requirements of 29 U.S.C. §§ 1102(a)(1) and (b)(3)," which "'protect[] [a] plan's

17  actuarial soundness by preventing plan administrators from contracting to pay benefits to persons

18  not entitled to them under the express terms of the plan.'" *Id.* at 822. In other words, these

19  requirements recognize that the interests of other plan beneficiaries could be adversely impacted

20  by promises and commitments not meeting the writing requirement of ERISA. In *Greany*, the

21  plan unambiguously provided that insurance coverage terminated on August 1, 1983. Because the

22  plan was unambiguous, the plaintiff could not bring a claim for equitable estoppel in spite of a

23  contrary oral representation that coverage terminated on a later date. *See id.*

24        Both parties acknowledge *Greany* and its progeny, though they struggle to determine with

25  how *Greany* should apply in the instant case. *See, e.g.*, Compl. ¶ 31 (claiming that the terms of the

26  Plan were "ambiguous [because] Defendants never provided Plaintiffs with . . . the signed plan

27  documents or a plan summary during their employment"). To be sure, *Greany* is not on all fours

28  with the instant case. In *Greany*, an oral representation was made *after* a written plan was already

1   established.  Here, oral representations were made *before* the written Plan was established.  In the

2   latter situation, an argument could be made that the *Greany* analysis should not apply at all – *i.e.*,

3   where an oral promise is made "pre-plan," it should be enforceable because, if the promise is made

4   pre-plan, then there is no written plan *at that time* that the promise can contradict.  *See Elmore v.*

5   *Cone Mills*, 23 F.3d 855, 869-70 & n.7 (4th Cir. 1994) (Murnaghan, J., concurring) (stating that,

6   although "[e]stoppel should not be employed to give force to unauthorized, oral promises that

7   contradict the written terms of an established plan[,] . . . I believe that where no plan exists, when

8   an authorized promise is unambiguously made and relied upon, and the promise pertains to an area

9   to which the contemplated Plan would relate, equitable relief is appropriate"; "[n]othing in the

10   ERISA law should permit a result whereby one party can unilaterally change a Plan later adopted

11   and thereby impair an already existing contract").

12        The Court is not persuaded that the pre-plan/post-plan distinction should dictate the

13   analysis.  Enforcing a pre-plan oral promise *once a plan has been established* is still problematic

14   so long as that plan is funded (for purposes of ERISA); the need to protect the broader group of

15   participants and beneficiaries still obtains.  As Judge Niemeyer noted in his dissent in *Elmore*: "To

16   allow informal or oral modifications of plans under some theory of common law would undermine

17   the protection afforded by ERISA because 'employees would be unable to rely on these plans if

18   their expected retirement benefits could be radically affected by funds dispersed to other

19   employees pursuant to' side agreements." *Elmore*, 23 F.3d at 875 (Niemeyer, J., dissenting).

20   Judge Niemeyer's reasoning is consistent with the Ninth Circuit's decision in *Greany* in focusing

21   on the actuarial soundness of the ERISA fund.  *See also Gabriel v. Alaska Elec. Pension Fund*,

22   773 F.3d 945, 956 (9th Cir. 2014).  The Court therefore reads *Greany* as prioritizing on protecting

23   funded ERISA plans.  The actuarial soundness of such plans, governed by ERISA's writing

24   requirement, can be impaired by hidden oral commitments whether made before or after creation

25   of the plan.

26        The analysis in the instant case is complicated by the fact that the parties have a dispute as

27   to whether the written Plan that Defendants provided in August 2019 to Plaintiffs is, in fact, a

28

United States District Court
Northern District of California

13

funded ERISA plan or instead what is known as a "top hat" plan.[10]  ERISA defines a top hat plan as "a plan which is *unfunded* and is maintained by an employer primarily for the purpose of providing deferred compensation for a *select group* of management or highly compensated employees." 29 U.S.C. §§ 1051(2), 1081(3), 1101(a)(1) (emphasis added).  Unlike "typical" ERISA employee benefit plans, top hat plans are *exempt* from requirements on funding (§§ 1081-86), as well as on participation (§§1051-61) and fiduciary responsibilities (§§1101-14).  Top hat plans are excepted from these requirements under the theory that high echelon employees have "the power to influence the design and operation of their deferred compensation plans." *Duggan v. Hobbs*, 99 F.3d 307, 310 (9th Cir. 1996).  As the Ninth Circuit noted in *Duggan*:

> "In providing relief for 'top hat' plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and therefore, would not need the substantive rights and protection of Title I."

*Id.* (quoting DOL Opin. Letter 90-14A.)  Thus, where there is a top hat plan, there is no fund (set up for the benefit of a broad group of participants and beneficiaries) to protect, and therefore there is no reason under *Greany* not to credit oral promises, particularly those made prior to establishment of the top hat plan.  In this regard, it is worth noting that a top hat plan may be created based on oral promises alone – *i.e.*, there is no writing requirement for top hat plans.  *See In re Valley Corp.*, 89 F.3d 143, 154 (3d Cir. 1996) (Holding that an oral top hat plan was enforceable because "top hat plans are excluded from ERISA's writing requirement" for which "top hat agreements can be partially or exclusively oral agreements.").

It is somewhat of an irony that, in the instant case, it is Mr. Svenhard and Mr. Kunkel who argue that the written Plan is a top hat plan, whereas Plaintiffs contend that it is not.  Mr. Svenhard and Mr. Kunkel point to the fact that the written Plan, on its face, states that it is a top hat plan.  *See* Kunkel Decl., Ex. A (Plan, art. I §1.2) (stating that the written Plan "is intended to be an

---

[10] The parties' arguments as to whether the written Plan is a top hat plan can be found in the sections addressing the claim for equitable relief.  However, the status of the written Plan is relevant to the equitable estoppel claim as well.

1    unfunded plan maintained primarily for the purpose of providing deferred compensation for a

2    select group of management or highly compensated employees, as such group is described under

3    Sections 201(2), 301(a)(3), and 401(a)(1) of ERISA").  In response, Plaintiffs argue that there is a

4    question of fact as to whether the written Plan is a top hat plan and that the "label" given to the

5    written Plan is not dispositive.  For the reasons discussed below, the Court agrees that there is a

6    question of fact as to whether the written Plan is a top hat plan.  The problem for Plaintiffs is that,

7    if the written Plan is *not* a top hat plan (as Plaintiffs contend), they have essentially pled

8    themselves out of an equitable estoppel claim, at least based on the record before the Court.

9          According to Plaintiffs, the written Plan is not a top hat Plan but rather a "regular" funded

10   ERISA plan.  The oral promises made to them prior to the written Plan cannot form the basis of an

11   equitable estoppel theory because, under the Court's *Greany* analysis, they contradict the terms of

12   the written Plan.[11]

13         The Court therefore dismisses Plaintiffs' claim for equitable estoppel.  However, the

14   dismissal shall be without prejudice because, at this juncture, it is not clear whether an equitable

15   estoppel claim would be futile.  Plaintiffs have leave to amend, although the Court notes that any

16   amendment must be made in good faith as required by Federal Rule of Civil Procedure 11.

---

[11] Technically, Plaintiffs' claim here seems to be one of promissory estoppel rather than equitable estoppel.  As the Ninth Circuit has explained, equitable estoppel applies where a plaintiff claims misrepresentation or concealment of a present fact; in contrast, promissory estoppel applies where a plaintiff alleges that a promise or future guarantee was made.  *See Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1397 (9th Cir. 1986).  In the instant case, Plaintiffs assert that oral promises were made to them; thus, promissory estoppel would seem to be the more applicable theory.

     Although the Ninth Circuit has stated that "promissory estoppel never applies in the ERISA context," *Wong v. Flynn-Kerper*, 999 F.3d 1205, 1212 n.8 (9th Cir. 2021), that statement should be taken in context; the Ninth Circuit's approach for promissory estoppel seems to be consistent with the *Greany* approach for equitable estoppel.  *See DeVoll v. Burdick Painting*, 35 F.3d 408, 412 (9th Cir. 1994) (citing *Greany* to support the statement that "[w]e 'have recognized that federal equitable estoppel principles can, in certain circumstances, apply to some claims arising under ERISA"; adding that it would be improper to "imply a promissory estoppel remedy as a matter of filling an interstitial 'gap' in ERISA, as[plaintiffs] suggest"); *Miller v. Coastal Corp.*, 978 F.2d 622, 624-25 (10th Cir. 1992) (holding that because enforcing oral promises that contradict an established plan would negatively affect other participants in a *funded* plan, "to allow oral modifications under some theory of federal common law would undermine the protection afforded by ERISA's requirements.").

D.      Claim for Equitable Relief Pursuant to Section 502(a)(3)

In the third cause of action, Plaintiffs assert a claim for equitable relief under § 502 (a)(3), which permits a participant or beneficiary of a plan to bring civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  According to Plaintiffs, Defendants have breached their fiduciary duties and violated the terms of the Plan by, *inter alia*, failing to provide documents related to the claim for benefits, failing to identify the Plan provisions on which the denial of benefits was based, and failing to describe what information was needed to perfect their claims.  *See* Compl. ¶ 45.  Because of these failures, "Plaintiffs have incurred consequential financial losses and Defendants have realized gains, meriting the imposition of an equitable surcharge against Defendants."  Compl. ¶ 47.  Plaintiffs' losses include incurring attorneys' fees and costs "associated with the investigation of this claim and the prosecution of this action."  Compl. ¶ 48.

In moving for dismissal of the claim for equitable relief, Mr. Svenhard and Mr. Kunkel argue that the claim is predicated on a violation of fiduciary duties but that they have no fiduciary responsibilities to the Plan because it is a top hat plan.  In short, if the Plan is a top hat plan, Plaintiffs have no claim for equitable relief against these defendants.

As noted above, the parties have a dispute about whether the written Plan is a top hat plan. The Court agrees with Plaintiffs that there is a dispute of fact as to whether the written Plan is a top hat plan.  Even if Mr. Svenhard and Mr. Kunkel are correct in asserting that the written Plan is not funded, the Plan must still meet the "select group" requirement in order to be deemed a top hat plan.  *See* 29 U.S.C. §§ 1051(2), 1081(3), 1101(a)(1).  In their declarations, Mr. Svenhard and Mr. Kunkel assert that the written Plan covered only a select group, *see, e.g.*, Kunkel Decl. ¶ 4 (testifying that, from 2008 to 2019, the total number of employees at the company were 250-350 but that the Plan had only 16 participants who were paid at the highest compensation level and were upper-level management personnel), but those declarations may not be given credit at the 12(b)(6) phase of proceedings.

Furthermore, the Ninth Circuit has indicated that determining if a covered group is a "select group" requires "more than a mere statistical analysis." *Duggan*, 99 F.3d, at 312. A "select group," as a requirement for a top hat plan, covers only "employees who 'by virtue of their position or compensation level, have the ability to affect or substantially influence . . . the design and operation of the plan.'" *Id.* at 313; *see also Grigg v. Griffith Co.*, No. 1:13-CV-1379, 2014 U.S. Dist. LEXIS 3336, at \*17 (E.D. Cal. Jan. 10, 2014) ("To be limited to a 'select group' of employees within the meaning of 29 U.S.C. § 1101(a), the MBP must be limited to a small percentage of Griffith's workforce and the participants must be able to affect or substantially influence the design or operation of the MBP."). Here, Mr. Kurisu was a purchasing manager, Mr. Prola was a regional sales manager, and Mr. Pruitt was a regional sales manager/national accounts manager. Although Plaintiffs may have received significant compensation based on these positions, their titles alone suggest they were not in a place to influence the design and operation of the Plan.

Accordingly, the Court holds that there is a factual question as to whether the written Plan constitutes a top hat plan, and thus dismissal of the claim for equitable relief at this time is not appropriate.

E.    Claim for Penalties Pursuant to Section 502(c)

In the final cause of action, Plaintiffs allege that Mr. Svenhard and Mr. Kunkel are Plan administrators and that they violated § 502(c) by failing to provide Plaintiffs with Plan documents upon request. *See* Compl. at ¶ 52. Section 502(c) allows a court in its discretion to provide penalties against any administrator "who fails to . . . comply with a request for any information which such administrator is required by this subchapter to furnish to a participant . . . in the amount of up to $100 a day from the date of such failure or refusal." 29 U.S.C. § 1132(c).

Mr. Svenhard and Mr. Kunkel first argue that Plaintiffs have not sufficiently alleged that they are Plan administrators. For the reasons stated above, *see* Part III.B.I, *supra*, Plaintiffs have adequately pled as much. Mr. Svenhard and Mr. Kunkel also argue that, even if they are Plan administrators, they cannot be held personally liable for any § 502(c) violations. But the plain text of the applicable statute indicates otherwise; it provides that the administrator may, "in the court's

1    discretion[,] be personally liable to [the] participant or beneficiary."  29 U.S.C. § 1132(c)(1).

2    Finally, Mr. Svenhard and Mr. Kunkel contend that the claim is not viable because Plaintiffs have

3    alleged that, in August 2019, they were given a copy of the written Plan.  The problem for these

4    Individual Defendants is that § 502(c) requires that information be provided within thirty days of

5    the request.[12]  As noted above, Plaintiffs have alleged that the information was not provided within

6    this specified timeframe.

7    F.    Summary

8         For the foregoing reasons, the Court grants in part and denies in part Mr. Svenhard and Mr.

9    Kunkel's motion to dismiss.  Specifically, the Court dismisses the claim for equitable estoppel

10   based on the prior oral promises but with leave to amend.  In addition, for the claim for benefits,

11   the Court holds that Plaintiffs have waived any claim that Mr. Svenhard and Mr. Kunkel may be

12   held personally liable.  The motion to dismiss is otherwise denied.

## IV.    KOHLES'S MOTION TO DISMISS

14        In his motion to dismiss, Mr. Kohles makes two arguments.  First, he contends that all

15   claims against him must be dismissed because each is predicated on his being a Plan administrator

16   or fiduciary, but Plaintiffs have simply alleged in conclusory terms that he is a Plan administrator

17   or fiduciary.  Second, he asserts that there are independent grounds for dismissal that are specific

18   to each cause of action (*e.g.*, for the equitable estoppel claim, he contends that *Greany* and its

19   progeny are a bar to relief).  The Court need only address the first argument.

20        Plaintiffs do not dispute that each of their claims against Mr. Kohles are predicated on his

21   being a Plan administrator or fiduciary.  And Mr. Kohles is correct that there is only a singular

22   conclusory allegation that he is a Plan administrator or fiduciary.  *See* Compl.  ¶ 6.  Given this

23   situation, the Court agrees that dismissal of all claims against Mr. Kohles is appropriate.

24        Although the Court reached a different result for Mr. Svenhard and Mr. Kunkel, their

25

26   _____

27   [12] Plaintiffs have also suggested that Defendants failed to provide other documents.  *See* Compl. ¶
     18 (alleging that Mr. Kurisu asked for documentation as to how his pension benefit was calculated
     or determined); *see also Sconiers v. First Unum Life Ins. Co.*, 830 F. Supp. 2d 772, 779-80 (N.D.
28   Cal. 2011) (discussing claim for penalties based on failure to provide documents, including
     documents explaining how plaintiff's monthly benefit was calculated).

United States District Court
Northern District of California

1   situation is different.  The terms of the written Plan identified the Board as the Plan Administrator,

2   *see* Kunkel Decl., Ex. A (written Plan) at Art II, §1, §2.1,  and Mr. Svenhard and Mr. Kunkel

3   conceded that they were Board members.  Here, Mr. Kohles has not made any comparable

4   concession that he was a Board member.  (In fact, he claims (albeit in a declaration that the Court

5   may not consider for 12(b)(6) purposes) that he was an outside accountant.)

6           The Court therefore dismisses all claims against Mr. Kohles.  The dismissal is without

7   prejudice but, at this juncture, without leave to amend.  If, during discovery, Plaintiffs uncover a

8   good faith basis for asserting that Mr. Kohles was in fact a Plan administrator or fiduciary, then

9   they move for leave to amend to add him back to this litigation.

10                          **V.        CONCLUSION**

11          For the foregoing reasons, the Court grants in part and denies in part Mr. Svenhard and Mr.

12  Kunkel's motion to dismiss and grants Mr. Kohles's motion.  The claims against Mr. Kohles are

13  dismissed without prejudice but, at this point, without leave to amend.  Bearing in mind their Rule

14  11 obligations, Plaintiffs have leave to amend the equitable estoppel claim against Mr. Svenhard

15  and Mr. Kunkel.  Any amendment shall be filed thirty (30) days of the date of this order.  If an

16  amended complaint is filed, Mr. Svenhard and Mr. Kunkel shall respond to the amended

17  complaint within thirty (30) days of the amendment.  If no amended complaint is filed, Mr.

18  Svenhard and Mr. Kunkel shall respond to the original complaint within sixty (60) days.

19          This order disposes of Docket Nos. 27 and 29.

20

21          **IT IS SO ORDERED**.

22

23  Dated: July 30, 2021

24

25  _____

26  EDWARD M. CHEN
    United States District Judge

27

28

*United States District Court*
*Northern District of California*